25 C.C.P.A.(Patents)

## In re McKEE.

### Patent Appeals No. 3939.

Court of Customs and Patent Appeals.

March 28, 1938.

Roy W. Johns, of Chicago, Ill., for appellant.

R. F. Whitehead, of Washington, D. C., (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office which affirmed rejection by the Examiner of process claims 7 to 9, inclusive, 21, 22, 26, 39, and 40, together with product claims 33 to 38, inclusive. Four process claims but no product claims were allowed.

Claims 7, 22, and 33 are illustrative, and are as follows:

"7. The method of treating meat which comprises thoroughly cooking and simultaneously smoking in a saturated atmosphere.

"22. The method of cooking ham which comprises thoroughly cooking the meat by subjecting the meat simultaneously to the action of heat and smoke in a humid atmosphere, the action of the heat being continued for a relatively longer period than is usual for cooking meat.

"33. As a new article of manufacture, ham which is thoroughly cooked having a distinctive combination of flavor and tend-

erness which flavor and tenderness is the characteristic result of subjecting the ham to the combined, simultaneous action of heat and smoke in a humid atmosphere for a relatively longer period than is usual for cooking ham."

The reference relied upon is Rutherford, 1,837,924, December 22, 1931.

The invention relates to a method of cooking meat and to the resulting product. The Examiner has properly described the method as follows:

"This case relates to the production of cooked, smoked meat products, described as exceptionally tender and having unusual flavor. In the practice of the invention, hams pickled in the usual manner are placed in a smoke house in which the air is raised to a temperature of 190-195°F. Humidity is raised to the saturation point by introducing steam in the smoke house. Smoke is applied simultaneously. The temperature, humidity, and smoke conditions are maintained until the inside temperature of the hams reaches about 125°F., requiring from three to six hours. The air temperature is then reduced to 160-165°F. and the humidity correspondingly lowered, but maintained at the saturation point. These conditions are maintained for an additional ten to thirteen hours, making the total cooking time an average of sixteen hours. The hams are then removed from the smoke house, being then chilled and treated in the usual manner.

"Applicant points out the instant cooking procedure requires a cooking period two to three times longer and temperatures 10 to 35° higher than in any cooking schedule used in the past, which produces the unusual results above mentioned. It is also pointed out by applicant that hams cooked for as long a period as the instant product by ordinary methods would be over-cooked."

The patent to Rutherford discloses an apparatus for the simultaneous use of heat, smoke, and steam in the cooking of meat. This manner of cooking, the patent states, prevents the food from shrinking and from becoming crisp and dry, and provides for the penetration of the heat and smoke flavor into the food resulting thereby in a highly improved and most appetizing barbecued food product.

A careful examination of the description in the application convinces us that the Examiner correctly concluded that the critical factors which bring about the improvement in flavor and increased tenderness in the product are:

"1. The combination of (a) high temperature, (b) high humidity, and (c) smoke.

"2. The use of relatively high temperatures in the first cooking stage to produce, due to the high temperature and high humidity, a gelatin coating on the ham, which acts to seal in the moisture and natural flavors, thus bringing about the results sought.

"3. The use of . lower temperatures in conjunction with the relatively extreme cooking period in the final cooking stage."

None of the rejected process claims include all of the steps held to be critical and consequently do not set forth definitely appellant's invention. Claims 8, 9, 26, and 40 do not include the step of subjecting the meat to smoke. Claims 7, 21, and 22 do not include the step of using relatively high temperature and high humidity to produce the gelatin coating, and also omit the third step—the use of lower temperatures.

We do not think the expression "thoroughly cooking" the meat covers the use of lower temperatures, as contended by appellant. "Thoroughly cooked" is defined in the specification as a cooking "at least twice as long as would be considered proper in ordinary cooking." The time proper in ordinary cooking is variable, depending on the practice of the cook, the weight or size of the meat, the desired heat, and other factors. Therefore, in measuring what is twice as long as would be considered proper in ordinary cooking, we are without unit of measure. The Board stated that, "We have no proof that the product can be obtaned except by employing all of the critical steps set forth in the specification. Therefore, to merely refer generally to extended time of cooking and subjecting the meat to some other conditions will not define applicant's invention whereby an improved product is obtained. * * *"

Appellant contends that the factors held to be critical cannot be so in fact, as they "are patently inappropriate for other variants of the process." This contention, we think, is sufficiently answered in the specification, which states as follows:

"Among the many products which may be advantageously treated in accordance with this invention are bone-in hams, boneless hams, spiced hams, lunch meat, liver cheese, bologna, minced ham, pork tongue, beef tongue, beef brisket, picnics and the like.

"In all cases the process would be the same as has been described for hams in the foregoing specification. * * *

"I have found that any of these products when processed at these high temperatures in the presence of smoke and saturated air for the long period of time in which I keep them in the combined cooking and smoking process, develop a very unusual and desirable flavor entirely different from any flavor which has been previously produced by other methods of cooking these products."

Product claims 33 to 38, inclusive, were rejected on the patent cited and because they involve process limitations which do not define over the prior art.

We do not think the product involves invention. Undoubtedly the process produces very nicely cooked meat. The affidavit and testimonial letters in the record indicate that dealers are much pleased with "Premium Delicatessen Ham." This approval of ham, however, does not make the product claims patentable.

We think it is quite clear that the affidavit and letters pertain to the hams produced by the allowed process claims. The product claims are drawn in terms of the process, but even if this were proper as an exception to the general rule, nevertheless critical steps are omitted in the claims. Therefore, we are unable to see how the rejected product claims can cover the product mentioned in the affidavit and letters. The product here, in our opinion, is not different from the product of the Rutherford patent, except, possibly, in degree. Flavor and tenderness in cooked meat are relative qualities differing in almost as many ways as the tastes of individuals. We approve the reasoning of the Examiner, in this respect, which reads as follows:

"It is apparent that different cooks, given the same recipes, will produce products varying in flavor, tenderness, texture, and other characteristics. Yet it cannot be said that any of these products are patentably different, or that any different product is produced, except possibly in degree. To hold that any food product, said to possess a better flavor and to be more tender than a similar prior art product, is patentable by virtue of these differences is believed to be contrary to well established principles of patent law and to place a premium upon statements of qualities which are incapable of clear definition and which vary with each individual according to his taste and perception, and which are therefore without definite significance."

The product here is not a new article. It has the same general characteristics and qualities possessed by all cooked meat. Any particular flavor or tenderness of the product we think is difference in degree only. Maryland Hominy & Coraline Co. of Baltimore City v. Dorr, C.C., 46 F. 773.

The decision of the Board is affirmed.

Affirmed.